IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JO BELLE BALDONADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 04 C 4312 |
| WYETH *and its division,* | ) | |
| WYETH PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Jo Belle Baldonado has sued Defendant Wyeth alleging that Wyeth's hormone replacement therapy products, including Prempro, caused her breast cancer. In advance of trial, Defendant asks the Court to preclude Plaintiff from introducing the expert opinions of Dr. Michael Maloney, an economist designated to testify regarding punitive damages. For the reasons discussed below, Defendant's motion is granted in part. A *Daubert* hearing will take place consistent with this Order on May 30, 2012 at 10:00 a.m.

## BACKGROUND

On May 27, 2003, Plaintiff Jo Belle Baldonado commenced this action against Defendant Wyeth and others in the Circuit Court of Cook County, Illinois, alleging that Defendant's hormone therapy products caused Plaintiff to develop breast cancer. In her Amended Complaint, Plaintiff asserts claims that include negligence, strict products liability, failure to warn, breach of express warranty, negligent misrepresentation, fraud, and gross negligence. (R. 1 at 15-57, Am.

Compl.[1])  Defendant removed the action to this Court on June 28, 2004 on the basis of diversity

of citizenship.  *See* 28 U.S.C. §§ 1332, 1441, 1446.  (R. 1 at 1-7, Not. of Removal.)  Thereafter,

on July 27, 2004, Defendant filed an Answer to the Amended Complaint, denying that

Defendant's products caused Plaintiff's breast cancer and contending that the products were

appropriately tested, labeled, and marketed.  (R. 9, Answer.)

On September 8, 2004, the Judicial Panel for Multidistrict Litigation (the "MDL Panel")

conditionally transferred this action to the U.S. District Court for the Eastern District of

Arkansas (the "MDL Court"), pursuant to 28 U.S.C. § 1407, for coordinated or consolidated

pretrial proceedings with over two hundred similar hormone therapy actions.  (R. 13, Conditional

Transfer Order, at 1 (citing *In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366 (J.P.M.L.

2003) (designating transferee court for individual, class action, and other federal cases arising

out of the sale or use of prescription hormone therapy medications).)  Following more than seven

years of litigation in the MDL Court, the MDL Panel remanded the action to this District on

January 26, 2011, pursuant to 28 U.S.C. § 1407.  The case was reassigned to this Court on

January 25, 2012.  A jury trial is scheduled to begin on October 9, 2012.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and

the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct.

2786, 125 L. Ed. 2d 469 (1993)."  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir.

2009).  "The district court functions as a gatekeeper with respect to testimony proffered under

---

[1]Citations to "Am. Compl." refer to Plaintiff's First Amended Personal Injury Complaint, filed in the Circuit Court of Cook County, Illinois May 27, 2004.  (R. 1 at 15-74.)

Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). *See also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) ("It is the district courts' role to enure that expert testimony is both relevant and reliable."). Whether to admit expert testimony rests within the discretion of the district court. *See, e.g.*, *Gen. Elec. Co. v. Joiner*. 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). Indeed, a district court has "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Bielskis*, 663 F.3d at 894.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011). The inquiry under Rule 702 is "flexible." *Bielskis*, 663 F.3d at 894.

District courts employ a three-part analysis before admitting expert testimony:  (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Illinois Central R.R. Co.*, 629 F.3d 639, 644 (7th Cir.

2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in

their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v.

Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## ANALYSIS

Defendant moves to exclude the testimony of Dr. Michael Maloney, whom Plaintiff has

designated to testify regarding punitive damages. Dr. Maloney has an undergraduate and

masters degree in economics, and also holds a Ph.D. in economics. He is a tenured professor at

Clemson University, where he teaches courses in economic theory, financial economics,

industrial organization, and managerial economics. Dr. Maloney has published numerous

articles on economics and has offered expert opinion in litigation on corporate net worth and

valuation.

In its present motion, Defendant does not challenge Dr. Maloney's expert qualifications,

but instead argues that Dr. Maloney's proposed testimony is misleading and fails to satisfy the

standards of Rule 702 and *Daubert*. Specifically, Defendant challenges Dr. Maloney's opinions

regarding 1) the measurement for punitive damages and 2) Wyeth's net worth.

## I.    Measurement of Punitive Damages

Defendant argues that Dr. Maloney's opinions regarding the proper measure of punitive

damages are improper, irrelevant and misleading. The Court agrees.

Dr. Maloney provides opinions regarding the "appropriate way to consider the proper

level of punitive damages." (R. 99-1, Ex 4, Report at 8.) He opines that the jury should look at

the way punitive damages:

> are handled in three other areas of social policy: U.S. Securities and Exchange
> Commission ("SEC") fines, antitrust violations, and speeding fines. The standard

> in SEC violations is disgorgement of the gains from illegal stock transactions plus a fine of approximately the same magnitude. Antitrust violations are punished by treble damages based on statute. Speeding ticket costs can be assessed relative to average earnings.

*Id.* He goes on to state that under the SEC "metric," the jury should assess punitive damages between $6.4 billion and $7.1 billion. *Id.* Under the antitrust regime, the daily profit rate on Premarin and the Premarin Family of products was between $3.12 and $4.18 million. Using the antitrust metric, Dr. Maloney opines that punitive damages would range between $19.1 billion and $21.3 billion. *Id.* Finally, the speeding ticket approach yields, in Dr. Maloney's opinion, a punitive fine of $1.13 billion when considering the cost of a speeding ticket and $168 million when only considering the fine under a speeding ticket. He bases the speeding ticket analysis on a $100 fine per each violation. *Id.*

In reaching his conclusions, Dr. Maloney does not explain why or how he extrapolates the areas of SEC fines, antitrust violations, and speeding fines to this case. He fails to provide any foundation for his opinions in this area or explain how his expertise in economics provides the basis for this opinion. In sum, he has failed to provide any connection between these three areas and the facts of this case.

In addition, as another court recently concluded regarding Dr. Maloney's speeding ticket analogy:

> . . . Dr. Maloney's speeding-ticket metric is entirely arbitrary because he provides no reason for making $100 the amount of the hypothetical speeding ticket rather than another amount.

(R. 128, Ex. 6, Opinion in *Lea v. Wyeth LLC, et al*, Sept. 16, 2011, at 7.) The Court agrees.

Furthermore, it is not proper for Dr. Maloney to give an expert opinion on the amount of punitive damages the jury should award. The amount, if any, is for the jury to decide based on

the facts of this case and the applicable punitive damages law. Such expert testimony would

evade the province of the jury. *See Dering v. Serv. Experts Alliance LLC*, No. 06-C-357, 2007

WL 4299968, at *9 (N.D. Ga. Dec. 6, 2007) ("[A]llowing an expert opinion on the amount of

punitive damages is improper. The amount of punitive damages is to be determined by the

enlightened conscience of an impartial jury[.]"); *Anderson v. Boeing Co.,* No. 02-C-196, 2005

WL 6011245, at *2 (N.D. Okla. Aug. 2, 2005) ("Plaintiffs have not demonstrated that [their

expert] or any other expert, is more qualified than the average juror to make a determination

whether the proof merits punitive damages, and if so, to what extent."); *Voilas v. Gen. Motors

Corp.*, 73 F. Supp. 2d 452, 465 (D. N.J. 1999) ("[E]xpert testimony seeking to assist the jury by

providing certain methods of calculating damages as well as actual ranges of damages invades

the province of the jury and should be precluded.").

The Court grants Defendant's motion to preclude Dr. Maloney from testifying regarding

the proper measure for punitive damages.

## II.     Net Worth

Defendant argues that the Court should preclude Dr. Maloney from testifying regarding

Wyeth's net worth because net worth evidence is not admissible on the question of punitive

damages. It further contends that Dr. Maloney uses the wrong definition of net worth and

measures net worth at the wrong point in time.

### A.     Net Worth is Relevant to Punitive Damages Under Illinois Law

As an initial matter, Illinois law governs the Court's consideration of the punitive

damages determination in this diversity case. *See Rep. Tobacco Co. v. N. Atl. Trading Co., Inc.*,

381 F.3d 717, 735 (7th Cir. 2004) (in diversity cases, "state law governs the factors a jury may

consider in determining the amount of punitive damages, while federal law governs the district

court's review of the jury award and appellate review of the district court's decision").  Under

Illinois law, a plaintiff can present evidence of a corporate defendant's net worth where punitive

damages are at issue.  *See Powers v. Rosine*, 2011 Ill. App.3d 10070, 956 N.E.2d 583, 586, 353

Ill. Dec. 721, 727 (Ill. App. Ct. 2011); *Proctor v. Davis*, 291 Ill. App. 3d 265, 286, 682 N.Ed.2d

1203, 1216, 225 Ill. Dec. 126, 140 (Ill. App. Ct. 1997); *Pickering v. Owens-Corning Fiberglass*,

265 Ill.A pp.3d 806, 638 N.Ed.2d 1127, 818, 203 Ill. Dec. 1 (Ill. App. Ct. 1994).  Defendant's

reliance on *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992), is misplaced.  As

Judge Dow thoroughly explained in *El-Bakly v. Autozone, Inc.*:

> Whether punitive damages are available, however, does not end the inquiry.  Federal law
> and Illinois law differ in their treatment of the relevance of financial data reflecting a
> defendant's profits or net worth as evidence supporting a determination of punitive
> damages.  Under Illinois law, it is well-established that a defendant's financial status is a
> relevant factor relevant in determining punitive damages. . . . However, the federal law in
> this circuit is decidedly less clear this area.  The Seventh Circuit has suggested that
> financial information regarding a defendant corporation's net worth or profits may be
> irrelevant to the consideration of an award of punitive damages, at least under federal
> law.  But several courts in this district have opined that *Zazu* has been interpreted too
> broadly and that a defendant corporation's financial data may be a relevant factor to an
> award of punitive damages.

No. 04 C 2767, 2008 WL 1774962, at *5 (N.D. Ill. Apr. 16, 2008) (internal citations and case

explanations omitted).

Because Illinois law applies here, evidence of Defendant's net worth is relevant to the

issue of punitive damages.  The Court notes, however, that "[b]ecause of their penal nature,

punitive damages are not favored in the law, and courts must be cautious in seeing that they are

not improperly or unwisely awarded."  *Deal v. Byford*, 127 Ill.2d 192, 203-04 (1989); *Tri-G, Inc.

v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 264 (2006); *Loitz v. Remington Arms, Inc.*, 138

7

Ill.2d 404, 414 (1990). While the amount of punitive damages is a question for the jury, the threshold decision of whether the facts of particular case justify the imposition of punitive damages is a matter of law for the judge. *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004); *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill.2d 447, 453 (1987); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (Ill. 1978). Accordingly, before presenting any evidence of punitive damages to the jury, Plaintiff must first establish that she is entitled to seek such damages based on the facts in the case.

**B.      A Hearing Is Necessary to Evaluate Dr. Maloney's Definition of Net Worth**

In his initial report, dated February 13, 2006, Dr. Maloney opined that "Yahoo Financial reports Wyeth's net worth as of February 12, 2006, to be $61.97 billion." (R. 99-1, Ex. 4, Report at 7.) On March 16, 2009, Dr. Maloney updated his opinion as to Wyeth's net worth, opining that as of March 5, 2009, Wyeth's net worth was $60.74 billion. According to Dr. Maloney:

> This number is based upon the proposed merger between Wyeth and Pfizer where Pfizer, a willing and voluntary, is paying full market value for Wyeth of this amount. Under the proposed Pfizer purchase, Pfizer will pay $33 in cash for each of Wyeth's 1.33 Billion outstanding shares plus 0.985 Pfizer shares (valued at $12.67 on March 5, 2009). This number is consistent with my previously expressed opinion that Wyeth's net worth is $61 Billion.

(R. 99-9, Supp. Report.)

Wyeth challenges Dr. Maloney's opinions regarding its "net worth" on the basis that Dr. Maloney's opinions refer to market capitalization, not net worth. Wyeth contends that net worth refers to "the excess of total assets over total liabilities." (R. 99 at 11.) It relies on both Black's Law Dictionary and Generally Accepted Accounting Principles ("GAAP") for this definition. Indeed, Black's Law Dictionary provides that net worth is the "excess of total assets over total

8

liabilities." In addition, case law has defined the "normal sense" of "net worth" to mean assets minus liabilities. *See Sanders v. Jackson*, 209 F.3d 998, 999-1001 (7th Cir. 2000). Plaintiff has failed to identify any case law or other authority that defines net worth as market capitalization.

Although Plaintiff claims that Dr. Maloney "does not intend to simply use market capitalization as a substitute for net worth," it is unclear from his report and his deposition testimony how he has calculated net worth beyond market capitalization. Plaintiff broadly represents that "Professor Maloney will use his training, experience and expertise to apply sound economic principles, consistent with Illinois law, in providing the jury with his expert opinion as to Wyeth's net worth." Yet, Plaintiff fails to identify what "sound economic principles" Dr. Maloney intends to use and how his market capitalization opinion comports with those principles. Any such principles are not apparent from his report.

In addition, in a "Supplemental Affidavit" issued after his report, Dr. Maloney attempted to clarify his definition of net worth and included additional information regarding net worth. Dr. Maloney submitted that two definitions of net worth exist: 1) the accounting definition of assets minus liabilities; and 2) "the financial economics definition that I adopt in my analysis." (R. 154-1, Supp. Aff. ¶ 9.) In addition, Dr. Maloney "use[s] the financial economics definition because this measures the true value of the company. We are interested in the true value of the company when assessing punitive damages." (*Id.* ¶10.) He further opines on the financial economics definition of net worth:

> Net worth in financial economics is the same as market capitalization. This is true because for publicly traded companies, companies whose stock trades actively on stock exchanges, the stock market participants are continuously assessing the discounted expected future cash flows of the company. These discounted expected future cash flows are the value of the company. They are the difference between the value of the assets and liabilities for the company.

(*Id.* ¶13.) Plaintiff, however, fails to cite any Illinois case law supporting such a definition of net worth for purposes of punitive damages. This affidavit, on its face, also appears to conflict with Plaintiff's representation that she "does not intend to simply use market capitalization as a substitute for net worth."

The scientific reliability of the methodology underlying Dr. Maloney's net worth opinions is unclear based on the record before the Court. Because the basis for Dr. Maloney's "net worth" opinions is ambiguous and because the principles and methodologies that support his opinions are ambiguous and undeveloped in the record, the Court will conduct a hearing on this limited issue.

## CONCLUSION

The Court grants Defendant's motion to exclude Dr. Maloney's opinions regarding the proper measure of punitive damages. A *Daubert* hearing is scheduled for May 30, 2012 at 10:00 a.m. regarding Dr. Maloney's net worth opinions. Plaintiff has the responsibility for ensuring the attendance of Dr. Maloney.

**Date:** April 30, 2012

                                        ENTERED

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**

10